**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-7-2** |
| **SOULEYMANE KAH** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

For approximately one year, defendant Souleymane Kah conspired with several co-conspirators, including his co-defendants, to steal numerous vehicles from rental car locations across multiple states and to transport these vehicles to third-party buyers, including buyers in Pennsylvania and Delaware. In fact, the evidence shows that Kah and his conspirators stole at least 22 separate rental vehicles during the conspiracy, and that Kah himself was personally involved in the theft of at least 18 of these vehicles. Moreover, Kah's criminal history that his participation in this conspiracy was not a one-time foray into criminal activity. Rather, Kah's record shows that he engaged in theft and identity-theft related offenses for at least the six years prior to the criminal activity to which the defendant has pled guilty in this case, including a November 2020 arrest that occurred just months prior to the commencement of the criminal activity here (and for which the defendant was ultimately found guilty in 2024). Accordingly, the defendant's actions make clear that the defendant has little to no regard for the law and poses an ongoing risk of danger to the public.

For these reasons, as well as for the reasons set forth below, the government recommends a sentence in the high-end of the advisory guideline range of 57 to 71 months' imprisonment,

absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted); *see also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

# I. BACKGROUND

## A. Factual Summary

Between December 2020 and November 2021, the defendant conspired with Amadou Diol, Mbaye Lo, and other individuals based in Ohio to transport stolen vehicles to buyers (including Musa Fofana and his subordinates: Buyer 1 and Buyer 2) who were based on the East Coast. Throughout the conspiracy, the members of the conspiracy targeted vehicles owned by nationwide car rental companies with facilities at multiple airports. The defendant and his co-conspirators obtained the rental vehicles from these locations via fraudulent means and then took turns driving the stolen vehicles to the Pennsylvania and Delaware area where the vehicles were turned over to buyers in exchange for payment.

Specifically, the defendant and his co-conspirators utilized stolen identities to rent these vehicles, which they had no intention of returning, under the names of the identity theft victims. This required multiple preparatory steps. First, the defendant and other members of the conspiracy located genuine driver's licenses belonging to real individuals. Next, members of the conspiracy obtained blank credit cards which were used to create fictitious credit cards in the names of the identity theft victims matching the stolen driver's licenses. Third, a member of the conspiracy created online email accounts that reflected the names of the identity theft victims.

Armed with a genuine driver's license, a fictitious credit card, and a new email account, members of the conspiracy created online vehicle rental reservations via the rental car businesses' online reservation portals. The defendant and the members of the conspiracy then traveled to rental car companies' locations to rent the car, at times bringing along with them an individual whose appearance was similar to the photograph in the genuine driver's license who would effectuate the vehicle rental. With the vehicle rented, the defendant and his co-defendants

drove the vehicles across the country to the buyers, who intended to export the cars out of the country for financial gain.

Throughout the course of the conspiracy, the defendant played many roles: the defendant made multiple rental vehicle reservations using the stolen identifications, was at or near the airport rental locations for the majority of the vehicle rentals, negotiated the sale of stolen vehicles to the buyers, and assisted in the transportation of the stolen vehicles across state lines to the buyers.

**B. Procedural History**

On September 9, 2025, a grand jury returned a six-count superseding indictment charging Kah and his co-defendants, Diol and Lo, with one count of conspiracy, in violation of 18 U.S.C. § 371; and charging Kah with two counts of transportation of stolen motor vehicles, and aiding and abetting the transportation of stolen vehicles, in violation of 18 U.S.C. §§ 2312 and 2. The Superseding Indictment alleges that the defendants orchestrated a scheme to steal vehicles by renting them from car rental locations using driver's licenses belonging to third parties, failing to return the vehicles, and transporting the rented vehicles across state lines in order to sell them (without authorization).

On June 1, 2026, the defendant appeared before the Honorable Kelley Brisbon Hodge, United States District Court Judge for the Easter District of Pennsylvania, and pled guilty to Counts One, Two, and Three of the Superseding Indictment. During his colloquy, the defendant admitted his participation in the conspiracy between December 2020 and November 2021 (Count One), as well as his direct involvement in the thefts of 18 of the vehicles.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

#### 1. 18 U.S.C. § 371 (Conspiracy) – Count One

The statutory maximum sentence for Count One is 5 years' imprisonment, a one-year period of supervised release, a $250,000 fine, and a $100 special assessment.

#### 2. 18 U.S.C. § 2312—Transportation of Stolen Vehicles – Counts Two and Three

The statutory maximum sentence for Counts Two and Three is 10 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

#### 3. Total Maximum Statutory Sentence

In total, the defendant faces a maximum of 25 years' imprisonment, three years of supervised release, a fine of $750,000, and a $300 special assessment.

### B. Sentencing Guidelines

The U.S. Probation Office has calculated the defendant's advisory sentencing guidelines as follows:

| | |
|---|---|
| Base offense level | 6 |
| Loss of between $550,000 and $1.5 million | 14 |
| 10 or more victims | 2 |
| Use of an authentication feature | 2 |
| Organized scheme to steal vehicles | +2 |
| Adjusted offense level | 26 |
| Acceptance of responsibility | -2 |
| Timely notification of intent to plead guilty | -1 |
| Total offense level | 23 |

PSR ¶¶ 62-74. The Government agrees with this calculation. The defense has not objected to the calculation. With a criminal history category of III, the defendant's guideline range is 57 to 71

months. PSR ¶ 124.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment**

For the reasons outlined below, the government is seeking a sentence consistent with all the factors under Section 3553(a) and specifically requests a sentence at the high-end of the guideline range.

**1. The Nature and Circumstances of the Offense**

The defendant's offenses were well thought out and executed repeatedly with his co-defendants over the course of approximately a year. To carry out the scheme, the defendant and his co-conspirators created fake email accounts, made online reservations with the car rental locations using these emails accounts, obtained third-party driver's licenses, enlisted individuals who sufficiently resembled the procured driver's licenses to enter the rental locations and obtain the vehicles, identified buyers for the stolen vehicles, and transported the vehicles to the buyers. The record shows that the defendant personally assisted with the rentals of at least 18 vehicles, and the transportation of at least eight vehicles. Indeed, Kah crisscrossed the country in stolen vehicles for his personal financial gain and at the expense of the victim car rental companies.

The conspiracy required coordination among multiple individuals, including Kah, his co-defendants, and other co-conspirators identified in the Superseding Indictment, as well as unnamed co-conspirators who assisted by actually renting the vehicles with the driver's licenses of third-party victims. In total, the defendant and his co-conspirators stole at least 22 vehicles through these means as part of the conspiracy. Not only did the defendants' crimes cause hundreds of thousands in losses – approximately $578,221 – to the car rental locations from which they stole, but they victimized each of the individuals under whose name the vehicles were rented.

However, to understand the full nature of the defendant's offense, it is necessary to examine the role that Kah and the members of the Ohio conspiracy vis-à-vis the crimes of Fofana, Buyer 1, and Buyer 2. Based on the East Coast, Fofana and Buyers 1 and 2 sought out stolen vehicles from multiple sources to export for sale abroad. While Kah and the members of the Ohio conspiracy did not engage in the exportation of the stolen vehicles, they nonetheless played a critical role that enabled Fofana's business to flourish. Together with his co-conspirators, Kah helped fulfil the demand created by Fofana's criminal business venture. Moreover, Kah's base of operations in the Midwest provided Fofana's enterprise with a new market from which to steal vehicles—a market located far away from a border or seaport where law enforcement may not frequently identify the trafficking of stolen vehicles for export. In sum, Kah and his co-conspirators did not transport stolen vehicles in a vacuum; they played an integral role international conspiracy to profit from the exportation of stolen vehicles.

Moreover, the statement provided by the victim car rental company, PSR ¶ 56, lays out in detail the impact that the actions of Kah and his co-conspirators had on the company and its operations. When a rental vehicle was not returned, the company was obligated to respond, filing police reports and taking measures to recover the vehicle. As described by the victim car company, the company's efforts taken in connection with each of the stolen vehicles in this matter cost the company significant time and resources. Additionally, the victim car company explained that it had to implement additional underwriting measures to prevent this type of fraud, which slowed down all of the company's rental transactions, both negatively impacting the customer experience and undermining the victim car rental company's ability to perform in a highly competitive market.

Considering the nature of Kah's actions and his agreement with the Ohio co-conspirators, the role that Kah and his co-conspirators played in an international car theft ring, and the substantial impact his conduct had on a nationwide car rental company, a sentence at the high end of the guideline range is warranted.

### 2. The History and Characteristics of the Defendant

The history and characteristics of the defendant also weigh in favor of a substantial sentence of incarceration. While the defendant faced some childhood hardships, including moving first to Senegal and then to the United States, PSR ¶ 94, he indicates that he had the consistent support of his mother and siblings, always had his basic needs met, and never suffered any emotional, psychological, or physical abuse. *Id.* The defendant moved to the United States in 2010, and has resided here consistently since as a legal permanent resident. *Id.* The defendant's siblings are also in the United States, and have found gainful employment as a juvenile probation officer, a department store employee, and a member of the Navy. PSR ¶ 93. The defendant is a high school graduate and reports that he has been consistently employed since at least 2013. PSR ¶¶ 109, 111-18. Finally, the defendant has been married for six years, and has two children by this union and one child by a prior union. PSR ¶¶ 95-96. Nothing about the defendant's history and characteristics, including his upbringing, family support-system, or employment opportunities, support the conclusion that anything other than a high-end of the guideline system sentence is appropriate.

Moreover, between 2015 and 2020—the five years preceding the defendant's conduct here—the defendant was arrested four separate times, and ultimately convicted in each case, for crimes involving altered identification/forgery/provision of a false name. PSR ¶¶ 76-84. Notably, the fourth of these arrests occurred on November 24, 2020, PSR ¶ 84, just over three months

before the charged criminal activity in the present case began. As of the start of the criminal activity charged here, the defendant had already been convicted on three of these four arrests as well as an additional conviction for DUI. PSR ¶¶ 76-83. These were not youthful arrests. Rather, these arrests occurred when the defendant was between 24 and 30 years of age. These facts all support a high-end of the guideline sentence.

### 3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

A significant sentence of incarceration is also warranted given the serious nature of the defendant's conduct and the need to provide just punishment for the offense. As set forth above, the defendant played a crucial role in an international scheme designed to steal vehicles from a rental car company for export for financial gain. The actions of the defendant and his co-conspirators took an enormous toll on the rental car company. In its statement, described the expensive and time-consuming efforts it undertook to identify the connection between the vehicle thefts and how its systematic changes have altered its business practices.

The experience of the victim rental car company is far from unique. According to the National Insurance Crime Bureau ("NICB"), more than 659,000 vehicles were stolen nationwide in 2025. NICB, "Partnerships in Theft Prevention Drive Continued Declines in U.S. Stolen Vehicles," July 15, 2026 (available at https://www.nicb.org/news/news-releases/partnerships-theft-prevention-drive-continued-declines-us-stolen-vehicles (last accessed 7/16/2026)).

During the course and in furtherance of the conspiracy, the defendant and his co-conspirators engaged in a well-thought-out scheme to gain possession of rental cars that they intended to steal. The defendant and co-conspirators used fictitious email accounts, stolen identities, and fake identification documents—all of which were designed to hide their

connection to the vehicle rentals. In furtherance of the conspiracy, the defendant and his co-conspirators drove the vehicles across the country to East Coast cities, like Philadelphia, where the stolen vehicles were shipped overseas for sale. Simply put, the defendant was not engaged in rudimentary car theft; the defendant engaged in a complex conspiracy that utilized fraud and deception to obtain vehicles for profit.

Moreover, based on the defendant's criminal record, he was wholly undeterred by his five prior arrests, and exhibited a complete lack of respect for the law in carrying out this conspiracy. A serious sentence, therefore, is warranted to match the nature of the crime, to serve as just punishment for the defendant's actions, and to foster respect for the law.

**4. The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

A substantial sentence of incarceration is necessary to ensure that the sentence provides both specific and general deterrence. The theft of vehicles for export for profit is a nationwide problem that causes significant financial impact on vehicle owners, car rental companies, and insurance companies. While the number of vehicles stolen decreased over 23% between 2024 and 2025, still more than 659,000 vehicles were stolen nationwide last year. According to the NICB, the decrease is a result of increased coordination efforts between "law enforcement, auto theft prevention authorities, policymakers, manufacturers, insurers and the public." In other words, substantial effort and expense born by both law enforcement and the people impacted by this crime. Notably, the NICB cited that the three of the states that saw the largest decreases had "strengthened their criminal penalties for theft in recent years and have dedicated auto theft prevention authorities that support public awareness, law enforcement coordination, grantmaking, technology investments and partnerships with organizations like NICB." A

significant sentence of incarceration, therefore, is warranted to ensure that it sends a warning to others seeking to profit from the theft and transportation of stolen vehicles.

A substantial sentence is also necessary to specifically deter the defendant from similar action in the future. As discussed above, the defendant's criminal history demonstrates that this was not an instance of aberrant behavior or simply poor decision-making. Rather, the defendant's participation in this conspiracy was pattern of a pattern of undeterred criminal conduct. Moreover, the defendant's criminal history reveals numerous times when the defendant had the opportunity to change course, yet he instead elected to commit additional crimes. For example, when the defendant was convicted of possession of an altered driver's license and possession of marijuana in 2015, the defendant's adjudication was withheld following a guilty plea. PSR ¶ 76. The following year, however, the defendant was arrested for criminal possession of a forged instrument and, again, possession of marijuana. PSR ¶ 78. For this offense, he received a suspended sentence of 5 years imprisonment as well as 5 years of probation. *Id.* Despite this, the next year, the defendant was arrested for DUI, and while that charge was pending, he was arrested for forgery. PSR ¶¶ 79-83. He was sentenced to only 10 days for the DUI, and 2 years of community control for the forgery offense. *Id*. Just two years after completing his community confinement, which was reduced to approximately one year, the defendant was arrested for theft by receiving stolen property, giving false information to a law enforcement officer, and illegal possession by an inmate of a controlled substance, dangerous weapon or tool for commission of a crime. PSR ¶ 84. Yet again, the defendant was merely sentenced to five years' probation. *Id.* This chronology demonstrates that despite having five opportunities in the six years preceding the commencement of this criminal activity to correct his

trajectory, and nearly wholly avoiding jail time during this period, the defendant pressed ahead and carried out the scheme to which he is now pleading guilty over the next twelve months.

In short, the defendant's extensive contact with the criminal justice system has had no deterrent effect on this defendant. Consequently, a significant period of incarceration is necessarily to adequately deter the defendant's future criminal conduct and to protect the public from future crimes committed by the defendant.

**5. The Need to Avoid Unwarranted Sentence Disparities Among Defendants**

Adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide for similarly situated offenders and thus complies with Section 3553(a)(6) and avoids undue disparity. The Guidelines represent the distillation of more than 20 years of careful study of sentencing practices across the country and correlate as well to the varying severity of crimes as defined by Congress. Indeed, "the Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). The guidelines themselves "are designed to restrain unwarranted disparities." *United States v. Sample*, 902 F.3d 1196, 1201 (10th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 54 (2007)). That is what the government requests here. 18 U.S.C. § 3553(a)(4), (a)(6).

The properly calculated Guidelines range accurately accounts for the financial harm and the defendant's prior criminal history, while also taking into account the defendant's acceptance of responsibility. A sentence within the Guidelines range will avoid unwarranted disparities with similarly situated defendants nationwide who have committed similar crimes. Thus, a sentence

within the recommended sentencing guidelines range would not create any unwarranted disparities with the other defendants charged with these or related crimes.

#### 6. The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S.S.G. § 3553(a)(2)(D).

#### 7. The Need to Provide Restitution to Any Victims of the Offense

Pursuant to Section 3663A of Title 18, restitution is mandatory in this case, and the government requests that the Court issue an order that the defendant pay restitution to the victim car rental company. The government asks that the Court order the defendant to pay $578,221, joint and several with any other defendants associated with the vehicle thefts set forth in the superseding indictment.

### C. Supervised Release

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

The defendant is likely to face deportation proceedings following his conviction. However, the outcome of these proceedings is not guaranteed. Should the defendant remain in the United States following his release from any term of imprisonment, a term of supervised release of three years is warranted based upon the defendant's criminal history and the amount of restitution to be ordered. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B) to protect the public, § 3553(a)(2)(C), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV. <u>CONCLUSION</u>

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence at the high-end of

the guideline that accounts for the scope and severity of the defendant's criminal conduct is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*_/s Meghan Claiborne Bisio_*
MEGHAN CLAIBORNE BISIO
KARA TRASTER
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Kathryn Roberts, Esq.
kathrynroberts_esquire@yahoo.com
*Attorney for Defendant Souleymane Kah*

*/s Meghan Claiborne Bisio*
MEGHAN CLAIBORNE BISIO
Assistant United States Attorney

DATED: September 15, 2026